MATILDA CURTIS et al., Respondents, v. HENRY D. LAUGHLIN, Appellant.

St. Louis Court of Appeals, January 4, 1910.

1. **APPELLATE PRACTICE: Theory in Lower Court.** A case will be treated in the appellate court on the same theory it was presented in the court below, and where in a suit by a beneficiary against the trustee to terminate a trust, defendant declared in the trial court he was anxious to be relieved of the trust, and it appeared that the cause was an amicable one and instituted to relieve him of the trust funds, he cannot on appeal defend on the theory there was no trust, or, if there was one, that the court had no jurisdiction.

2. **TRUSTS: Interest of Trustee: Suit to Terminate Trust.** Where a divorce decree provided that to secure payment of ali-

mony to the wife the husband should convey property to a trustee, to be designated by the wife, and thereafter under such decree and designation and agreements between the parties, property was held by the trustee, he was not a trustee with an interest, and a court of equity had jurisdiction of a suit to terminate the trust.

3. **APPELLATE PRACTICE: Presentation of Questions in Lower Court.** Where, in a suit by the beneficiary to terminate the trust, the trustee merely asked in the trial court sufficient compensation as a fee for his attorney, and he introduced no evidence to show what services the attorney had rendered, or what would be a reasonable fee, and saved no exceptions, except to the overruling of a motion for new trial, and made no objection to any ruling of the court or to the court's taking the case under advisement without hearing evidence as to a fee, the fee fixed by the trial court will not be disturbed on appeal

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED.

*John M. Wood* for appellant.

(1) The contract of July 28, 1893, was one of three things: (a) A plain business contract, creating reciprocal rights and obligations between appellant Laughlin and respondent Curtis; or (b) An instrument creating a trust coupled with an interest; or (c) An instrument creating a naked trust in appellant. (2) (a) If the instrument was (a), a court of equity had and has no jurisdiction over the relation which it created. (b) If the instrument was (b), a court of equity had no jurisdiction over the relation which it created, except upon a showing of fraud, dishonesty, incompetence, or other recognized head of equity jurisdiction. 28 Am. and Eng. Ency. of Law (2 Ed.), pp. 979-981, and cases cited. The court had no lawful right to remove the trustee at the mere whim of the beneficiaries. Assets Realization Co. v. Trustees, etc., 65 N. J. Ch., p. 74; Invest. Co. v. Sydnor, 19 App. Cas. (D. C.) 89; 28 Am. and

Eng. Ency. Law (2 Ed.), p. 978, note 8. (c) If the instrument was (c), then the court had jurisdiction to remove the trustee only upon allowing him a reasonable compensation for his expenditures and services. 28 Am. and Eng. Ency. of Law (2 Ed.), pp. 1089, 1090, 1091, and cases cited in note 11, p. 1091. (3) In this case it appears that the trustee has rendered services for a period of twenty-five years, including the purchase of real estate, the building of houses and collection of rental, the payment of alimony, the sale of improved property, the reinvestment of the proceeds of sale, etc. Under these circumstances he was entitled to (a) reasonable compensation, and. (b) a reasonable attorney's fee. The court erred in allowing (b) without allowing (a). (4) Appellant in this case did not waive his right to compensation. On the contrary, he specifically reserved his right to it, to the extent of enabling himself to pay his attorney, not what the court might consider a reasonable fee, but an actual contractual obligation then existing. It was the overplus only that was waived. (5) To determine the compensation to which the trustee was entitled required inquiry and investigation, partaking of the nature of an accounting. To determine what expenditures, if any, the trustee was entitled to be reimbursed, required an accounting, or at least an opportunity for an accounting. To determine the extent of appellant's waiver of personal compensation required an inquiry into his then existing contractual relation with his attorney as that relationship involved the boundary line of the waiver. All of these matters required an accounting, or at least the opportunity to file a statement of account. (6) (a) In such a case as this, the proper practice requires the trial, first, of the preliminary issue of whether defendant is an accounting party. If the instrument was (a), supra, the defendant was not an accounting party. If the instrument was (b), supra, defendant was not an accounting party, in the absence of a showing of fraud or some other recognized

head of equity jurisdiction. But if the instrument was
(c), then the appellant was an accounting party with-
out any further showing, and when once the court de-
termined (whether rightly or wrongly) that the instru-
ment was (c), and that appellant was an accounting
party, it should have stopped then and there, and
should have entered an interlocutory decree, requiring
appellant to file his account in the first instance, and
then required respondents to surcharge and falsify it,
if they deemed proper. Lycan v. Miller, 56 Mo. App. 79;
2 Daniels' Ch. Pr., p. 208, and cases cited in note 2;
Maddeford v. Austwick, 11 Simon 207. (b) The decree
should have been that appellant account, and that the
accounting be taken in the manner directed by the de-
cree. 1 Ency. Pl. and Pr., p. 102, note 5, and cases cited;
Id., p. 103, notes 1 and 2, and citations; Hudson v. Tren-
ton Co., 16 N. J. Eq. 475.

*P. P. Mason* for respondent.

GOODE, J.—At the April term, 1883, of the cir-
cuit court of the city of St. Louis, a decree of divorce
was entered in favor of plaintiff Matilda Curtis, then
Matilda Weyl, against her then husband, August Weyl,
which decree, among other things, provided that to se-
cure payment of alimony decreed in favor of Matilda
Curtis (Weyl), said Augustus Weyl should convey to
such trustee as she should denominate, improved real
estate in the city of St. Louis, which would produce a
monthly income of one hundred dollars a month, to be
held by said trustee during her natural lifetime and at
her death to vest in Kate Lucile Gould and Mary Field
Weyl, children of the two parties, share and share alike.
The person selected to act as trustee was defendant, and
he continued to act from the time he was chosen in 1883,
to the date of the filing of the present suit. Augustus
Weyl and Laughlin owned certain residences on Lucas
avenue in the city of St. Louis, the title to which stood

in Laughlin's name, and at the request of said Weyl, Laughlin conveyed to Mrs. Curtis, then Mrs. Weyl, a life estate in the premises covered by two of the houses, in order to comply with the decree for alimony, and afterwards he collected the rents and profits of these premises, and paid the same to her to March 9, 1892. On December 6, 1892, Matilda Curtis, or Weyl, Augustus Weyl and Laughlin had a settlement of the trust and ascertained that to said date Laughlin had paid to Mrs. Curtis $10,200, in monthly payments of $100 each, had paid certain special and general taxes on the premises in which she had a life estate and other expenses as trustee, so that the disbursements by him to said December 6th, exclusive of the money paid directly to Mrs. Weyl, were $5757.74. The parties also found the total receipts of Laughlin as trustee to said date amounted to $12,656.99, and his total disbursements $15,957.74, leaving a balance in his favor of $3300.75, in which amount Augustus Weyl was indebted to him. On July 28, 1893, the same three parties, Mrs. Curtis, Augustus Weyl and Laughlin, entered into a written agreement regarding the trust in which they recited the settlement had on December 6, 1892; found that since said date Laughlin had paid out $700 and was chargeable with $574 of receipts, leaving a balance in his favor which had accrued between December 6, 1892, and July 28, 1893, of $126, which Augustus Weyl owed him; also that Matilda Curtis owed him $150 for moneys advanced to her. The agreement recited a prior agreement of March 8, 1892, between Laughlin and Mrs. Curtis, pursuant to which she had quitclaimed to him all her right, title and interest in certain buildings on Lucas avenue. This interest consisted of the life estate which Laughlin had conveyed to her at the request of Augustus Weyl in lots owned by Weyl, the title to which stood in Laughlin's name. The agreement of July 28, 1893, recited further that Mrs. Curtis consented to the sale of the premises in which she had quitclaimed a life

estate to Laughlin, "with a view to reinvesting the proceeds in other property in which she was to be given a life estate in lieu of the life estate quitclaimed; and on the 19th day of said month (March, 1892) they did, as an added feature of said contract, agree that in lieu of said interest in said property, said Laughlin should convey to her (Mrs. Curtis) a life estate in the premises immediately east of Nos. 2803, 2925, Lucas avenue, which contract was confirmed by said Augustus Weyl; the aggregate proceeds of the sale of said premises by said Laughlin, being $8000." The agreement of July 28th, further recited that since March 19, 1892, Mrs. Curtis had changed her mind and preferred not to have conveyed to her an interest in the premises last described, but in lieu thereof that Laughlin should reinvest the sum of $8000 in other property, in which he should convey to her a life estate in lieu of her former life estate; wherefore it was agreed the indebtedness of Matilda Curtis to Laughlin was cancelled and obliterated; that Augustus Weyl should convey to Laughlin the premises Nos. 2825, 2827 and 2829 Lucas avenue, in St. Louis, and in consideration of the conveyance Laughlin should receipt in full for the moneys advanced to Matilda Curtis over and beyond the sums he had received as trustee from the property; which surplus had been ascertained to be $3426.75; that it should be the obligation of Laughlin to invest $8000, the proceeds of the premises sold by him, and which had been quitclaimed to him by Mrs. Curtis, in real estate to be approved by her, and when so invested it should be his obligation to convey to her a life estate in such premises; and until the investment was made, he should not be liable for any interest on the fund of $8000; but in lieu of interest should be chargeable from month to month with an amount equal to the monthly net income of Nos. 2827 and 2829 Lucas avenue; that on the death of Matilda Curtis, Laughlin should be entitled to charge the remainder over of her life estate, with whatever

sums he might have advanced to her, either for her account or the account of Augustus Weyl, over and above any moneys he might be chargeable with under his contract, and after he had been thus reimbursed, he should convey by quitclaim deed, the remainder of the property, after the death of Mrs. Curtis, to her two children, Mrs. Gould and Mrs. Mamie Townsend (nee Weyl). These, in substance, were the provisions of the contract of July 28, 1893. Laughlin never invested the $8000 in real estate, because the other parties to the contract, Matilda Weyl and Augustus Weyl, preferred him to keep the money in his hands. This suit was instituted by Mrs. Curtis, and the children and heirs of her daughter, Mrs. Gould, and her daughter, Mrs. Humes, to terminate the trust and have Laughlin pay over the fund in his hands to the life tenant, Mrs. Curtis. It was alleged and proved the other parties in interest, that is to say, Mrs. Humes, and her grandchildren, the children of her daughter, Mrs. Gould, and Augustus Weyl, her former husband, had transferred to Mrs. Curtis all their right, title, interest and claim in and to the fund. The petition alleges Laughlin had signified his willingness and anxiety to surrender his trust and pay over the life interest to any trustee that might be appointed, but feared he would not have the right to do so without the consent of a court of equity. The prayer of the petition was that the court decree the plaintiff, Matilda Curtis, was the owner in fee, by purchase, of the trust fund balance held by Laughlin, and was entitled to receive the same from said trustee and release him from further liability; that said trustee be directed to pay over to her any balance of said fund in his hands and that he be discharged as trustee upon making said payment. The answer filed was a general denial. At the trial defendant Laughlin was put on the stand by plaintiffs, and identified the contract of July 28, 1893, which contract was then introduced in evidence. The witness identified also an account which he had had audited.

This work was done in Chicago where Laughlin resided and at his request, by an audit company, and showed his transactions in reference to the trust from December 19, 1899, to October 28, 1908, the day of the trial of this cause, and a balance in Laughlin's hands on said day of $2774.18.   Laughlin testified that, for the purposes of this case, the account was sufficient to base an admission on by him that he had said balance in his hands. Other evidence was then introduced to prove the assignment by the remaindermen of their interests to Matilda Curtis, and plaintiffs rested.   No evidence was introduced by defendant, but, instead, he addressed the court, stating that he contended the contract of July 28, 1893, did not create a trust in express terms, though he said he had administered a trust for Augustus Weyl for a quarter of a century; had treated the trust as one coupled with an interest and a discretion, and under his discretion the fund had dwindled from the sum it was originally to $2700, on account of advances made to Mrs. Curtis to provide for her.   He said further he did not believe he had power to relieve himself of his contract obligation, but the court had power to accept his resignation and make a decree which would discharge him from further liability; that if the court had power to discharge him, he was willing to resign and turn over the fund to the court, and let the court do with it as it saw fit; that he insisted on the payment of a lawyer's fee, as he had discharged the trust without compensation, because he was entitled to none if it was a trust coupled with an interest, but if it was a naked trust, he was entitled to compensation; that plaintiff's attorney had refused to concede compensation in the way of a lawyer's fee; that if defendant was forced to turn over the money he was "entitled to enough compensation to pay a lawyer to come in here and defend the case;" that if it was a trust coupled with an interest and he was not entitled to compensation, the only thing which could be done was to turn the case out of court and

leave the parties where they were, because he was not answerable for the fund until the death of Mrs. Curtis; that as a matter of fact he wanted to be rid of it, but in the right way, and if force was applied, he would stand on his legal rights. After those remarks had been made, the court took the cause under advisement and subsequently entered a decree finding plaintiffs were entitled to relief, decreed the trust theretofore existing with reference to the fund of $8000 in the hands of defendant should be terminated; that upon the accounting had and submitted in evidence, the court found defendant had in his hands $2774.18, which he was ordered to pay to Matilda Curtis, after deducting the costs of the present cause to the date of the decree, and the sum of $50 allowed defendant as an attorney's fee; that upon defendant's paying said judgment as rendered, he should be discharged from all further liability or accounting as such trustee. A motion for new trial was filed, which being overruled, an appeal was prosecuted to this court.

We have been forced into a long statement of this case in order to show the attitude of defendant in the court below in comparison with the points made on the appeal. It is perfectly evident the cause was an amicable one, and was instituted to enable defendant to relieve himself of the fund in his hands without being subsequently liable to any persons interested in it. In fact defendant said so in his oral argument before this court upon the appeal. He declared to the court below he was anxious to be relieved, but insisted on a fee for his attorney in the present case. On the appeal many points are made against the judgment which are inconsistent with the position taken below, and which we do not feel called upon to examine. It is contended there was no trust in respect of the $8000 fund, or if there was, it was a trust coupled with an interest; that in the former contingency a court of equity would have no jurisdiction and in the latter would have no right to remove the trustee; further, that if it was a naked trust, with no

interest in the trustee, defendant could not be removed on the mere request of the beneficiaries and without showing some cause; that in any event, if he was removed, he should have been allowed reasonable compensation for his services ranging over the twenty-five years he had administered the trust. This case must be treated here as it was presented to the court below, and nothing can be made of the argument, action and testimony of defendant there, except that, whatever the nature of his obligation, he wished to be discharged from it and only insisted on a fee for his attorney in the present case. He declared he asked no compensation for his services. Indeed, after making all the foregoing points against the judgment, and others, the brief says: "If the above premises be correct, it follows the court had no jurisdiction to terminate the trust other than with the consent of the trustee himself. But that consent was coupled with the contention that the court make him an allowance for services rendered (for a quarter of a century) sufficient to enable him to acquit himself of liability to his attorney." What defendant demanded in the court below was "enough compensation to pay a lawyer to come in here and defend the case;" and he declared he had discharged the trust without compensation. The real gist of the contention, if we rid it of all the accessories attached to it on the appeal, was that defendant should be allowed a fee for his attorney in this suit, and the real grievance here is the insufficiency of the fee allowed. We will have to dispose of the case with reference to this grievance solely; and with the best will in the world to aid the learned counsel for defendant to obtain a reasonable fee in the present case, we can find no ground to interfere with the allowance below, whether it was reasonable or not. The defendant was trustee and had no interest in the trust fund, and a court of equity has jurisdiction of this cause. Not a particle of evidence was introduced to show what services the attorney had rendered, whether he had ren-

dered any, or what would be a reasonable fee. Not only was no evidence introduced on the subject, but defendant did not offer any; indeed, offered no evidence at all, nor even made a suggestion as to what would be a reasonable fee. Not an exception was saved in the case except the one to the overruling of the motion for a new trial, and no objection was made to any ruling of the court or to the court's taking the case under advisement without hearing evidence about a fee. It no doubt would have been correct practice for the court to hear evidence as to what services the attorney had rendered, and to take the opinion of experts about what would be a reasonable fee for the services. The real point for decision is whether it is reversible error, on the complaint of defendant, that the court did not do these things when it was not asked to do them. We are perfectly clear a negative answer must be given to this inquiry. There might be some ground for complaint by plaintiffs that the attorney was allowed a fee without showing what his services were, or their value; but that defendant can complain when he put forward no offer of evidence, or demand for any particular allowance, is an untenable position. Indeed, it seems doubtful if the plaintiffs could complain, unless they had offered evidence on the question. [Doon v. Ross, 177 Ill. 225.]

But it is insisted the proper procedure was for the court to order defendant to account as trustee and then let plaintiffs surcharge or falsify the account, if they desired; that if this had been done, defendant would have been afforded an opportunity to put in a claim for allowance of compensation to his attorney. Considering the suit was an amicable one and defendant was anxious to be relieved of his trust, and only asked for a fee for his attorney, and the further fact that he had prepared an account of his stewardship down to the date of the trial, admitted it showed a balance in his hands, and as the court accepted this showing made by defendant himself, we cannot put the court in the wrong for not order-

ing another and wholly unnecessary accounting, even if ordinarily the right practice is as defendant says. Clearly it was incumbent on defendant, if he insisted on a specific allowance to his attorney, to prove what fee had been agreed on between him and his attorney, and that it would be a reasonable remuneration for what the latter had done in the case. Having omitted to take any step to enlighten the court on the subject or ask any action except the allowance of a fee, he appears to have chosen to leave the amount to the court's discretion, unaided by testimony.

We are compelled to affirm the judgment. It is so ordered. All concur.